## Sturge License

*Sidney Z. Levy,* for appellant.

*J. Charles Hanahue* of *Warren, Hill, Henkelman & McMenamin,* for Secretary of Revenue.

PER CURIAM, June 1, 1955.—The Secretary of Revenue suspended the motor vehicle operator's license under the authority of section 615 (*a*) 1 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §192, on information that the present physical condition of appellant would make it hazardous for her to operate a motor vehicle on the highways. Direct appeal to this court followed.

From the evidence we find:

1. Appellant is a woman 51 years of age, single, has been a licensed vehicle operator for 30 years and during that period had never been arrested for any violation of The Vehicle Code, nor involved in any reportable accident.

2. Appellant is by occupation a breeder and exhibitor of dogs. She lives with a woman friend in a

rural area, her home is several miles away from any form of public transportation, and transportation is necessary for her in her business and personal life.

4. In October, 1953, appellant suffered a stroke, the results of which left her partially paralyzed on the left side, including the left arm and left leg.

4. In 1954, Miss Sturge was reëxamined as to her ability to operate a motor vehicle, passed the examination and was issued a motor vehicle operator's license of a style known as a "crippled operator's license".

5. In February 1955 Miss Sturge suffered a fall and injured her left knee. The fall was traumatic in origin, the results of which required hospitalization from February 22 to March 10, 1955.

6. In March, 1955, her personal physician reported that because of her condition, partial paralysis, arteriosclerosis and hypertension, in his opinion she was not competent to drive an automobile.

7. Under date of April 5, 1955, Miss Sturge was notified by the Secretary of Revenue that her operator's license was suspended because of her physical condition.

8. On May 13, 1955, a physician, Dr. Thomas McWilliams, examined Miss Sturge on behalf of the Commonwealth. Doctor McWilliams testified at the hearing that Miss Sturge was partially paralyzed but that paralytic condition had improved substantially since the original stroke in 1953, that at the time of the examination he found weakness in her left arm and weakness in her left leg, a balance test indicated a poor balancing ability, her blood pressure was 220 over 120 and that examination of the eye grounds indicated arterial changes.

9. Doctor McWilliams stated as his professional opinion that Miss Sturge's condition would make it hazardous or unsafe for her to operate an automobile because of her physical condition as indicated, with

the consequent weakness on her left side and the possibility of another stroke.

10. Dr. Louis G. Kareha testified at the hearing that he had been the attending physician for Miss Sturge during the year 1955, that her paralytic condition had greatly improved since 1953, that his original opinion, expressed to the Department of Revenue in March, 1955, that Miss Sturge was unfit to drive was based on the theory that her fall was as a result of her paralytic condition, whereas, in fact it was not, and he believes that in view of the improvement in her condition, Miss Sturge would be a proper person to have an operator's license and it would not be hazardous for her to operate a motor vehicle.

11. Dr. Anna C. Clarke, a physician of the City of Scranton, testified that she had made periodic examinations of Miss Sturge, largely because of her long family friendship, that Miss Sturge has good grip in her left hand and good push in her left leg and that in Doctor Clarke's opinion it would not be hazardous for Miss Sturge, considering her present condition, to operate a motor vehicle.

12. At the hearing Miss Sturge exhibited ability to move her left hand and her left leg, although motion is restricted.

13. Sergeant Shaffer, of the Pennsylvania State Police, who administered a recent driving test to Miss Sturge, thinks that from his observation Miss Sturge's "stopping reaction" appears to be slow.

The question before the court on this hearing de novo is whether or not suspension is justified, and since no exact standards of physical qualifications to operate a motor vehicle are prescribed in The Vehicle Code, the decision must call for exercise of the broad discretionary power of the court, and we are required to administer justice according to the evidence and circumstances presented: Hardwick Automobile License

Case, 348 Pa. 266. We are mindful of the fact that it is a most serious matter to deprive an individual citizen of a privilege which has come to be regarded in the minds of most people as a right, in the absence of evidence showing a culpable violation of the law. We are mindful also of the essential purpose of The Vehicle Code, which is "An Act for the protection of the public safety" as provided in its title. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552, provides that in ascertaining the intention of the legislature in the enactment of a law the courts must be guided by the following presumption, among others:

"(5) That the Legislature intends to favor the public interest as against any private interest."

The public interest in this case is in public safety on the highways. As against a demonstrated record of safe driving on the part of this appellant, we have now evidence of a condition of physical handicap which offers a grave possibility of danger at the most unexpected moment, both to appellant herself and to others using the highway. We note, of course, that no physician has testified to immediate probability of another physical seizure which might affect Miss Sturge, but that the possibility exists. This possibility, combined with hypertension and evident arterial changes and the limited motion of the left arm and leg, lead us to the conclusion that it would be hazardous for Miss Sturge to continue to operate motor vehicles on our highways. Regrettable as it may be to place Miss Sturge at a disadvantage in the conduct of her social and business affairs, we are nevertheless of the opinion that it is for her own best interest, as well as in the interest of public safety, that the action of the secretary in suspending her operator's license should be approved.

Now, June 1, 1955, the appeal is dismissed.